Welcome, everyone, to the second day of this panel's sitting for the week. We have four cases to hear this morning. We'll probably hear two of them and then take a break and hear the next two. We have very interesting cases, important cases. That may not be why our crowd is a little bit larger than it sometimes is back there, but the first two advocates should be honored that you have this audience. One of our members is particularly aware why our group is so large. I call on Judge Higginson to welcome our guests. Judge Higginson Well, welcome again. I saw a few of you out in the hall, and first of all, thanks to your school and your teacher and then for our staff for letting you all come. Most of all, thank you, you all, for being interested in the law and being able to watch Talented Counsel. I'm honored to be able to sit on this court. I used to just be a lawyer here and a parent of two kids who went to Ben Franklin, and then I caught on the court about 11 years ago, and so these are two judges that I've learned a great deal of. They're both mentors of mine, so believe it or not, I at least, sometimes other judges, I'm nervous when I'm asking these lawyers questions. It may not seem that way, but they know these cases inside and out, so I'm just, we're just probing to ask them to clarify points so we can resolve the dispute. So just the last, I'll take a little bit more time. The point here is these cases have already come through another court, and so that court has ruled on them and resolved them, and our job is just what I'll call error correction. We're going to try to ask the lawyers questions to decide whether the lower court that made the ruling was right or wrong, and so we'll hear a series of cases. I think the only two you all will hear, the first one's a criminal case and the second one is a disability case, and I'm just, I know I can speak for all my colleagues, and there's 17 of us because we stretch across three states, Louisiana, Mississippi, and Texas, and we're lucky that the courthouse for our court is here in New Orleans, so it's really just high schoolers like you that can come and watch these proceedings, but Judge Southwick's from Mississippi and Judge Higginbotham's from Texas, so we really are flattered that you came. I said to a few of you out there, we don't often see college students, even law students, but here we've got Sacred Heart students, so I hope some of you become lawyers and judges. Thank you, Steve. One of the rules you're probably aware of, you don't get to ask any of the questions, but you can listen, and we very much appreciate your interest in being here. First case of the day, United States v. Velazquez-Roldan. We'll hear from Ms. Kimmelman. May it please the court, Kristen Kimmelman for Adan Velazquez-Roldan. Mr. Velazquez challenges the guidelines calculation for his illegal reentry sentence, specifically how his 2020 Georgia sentence was scored. And of course, below and as in our briefing, the arguments are premised on him not having been adjudicated guilty for that Georgia offense. The government has called that into question with the 28-J letter from last week. We ask the court in its discretion to not consider that late-raised argument and instead decide the important legal issue of how a diversionary disposition is scored under the guidelines. But just again, just factually, he did plead guilty at some point to child molestation in Georgia. Correct. And in this case, he's being punished for illegal reentry, which he pled to. Correct. And the child molestation guilty plea did get him a year plus in jail? So it was a sentence of 20 years probated, all of it probated, with as a condition of probation the 15 months, 12 days, which according to that document and also the timing in the PSR appears to be his time served. So he had been arrested for that child molestation offense and then, you know, 15 months and 12 days later got that sentence. Well, this is somewhat informing the government as well. If we can avoid injecting a new issue at this late date, I am a little concerned that we don't distort the law if, in fact, whatever the sentence was in Georgia doesn't have the status or doesn't have the, doesn't meet the conditions that we really, or then, I don't know, your argument should apply to it. I mean, so we should. Correct. I think to answer that concern, the question, as I understand it, this late raise dispute, is not about what does a first offender sentence under Georgia law mean. It's whether Mr. Velasquez, in fact, got that first offender sentence. So it's a factual issue specific to his case. If the court doesn't want to ignore that factual issue, because it does seem like there is some merit to it, I'm just not sure enough to concede to that point, then I think the district court is in a better position to make that factual determination, and this court can give it guidance as to how a diversionary disposition without the adjudication of guilt, but that 15 months as a condition of probation is scored under the guidelines, and then the district court can make the ultimate determination of how Mr. Velasquez's guidelines should have been scored. It's an odd predicament, because I'm very sympathetic to you that the government is sort of repudiating what they said, at least implicitly in the district court, and then explicitly in the brief. So they have absolutely reversed, but it has to do with a fact circumstance that's either right or wrong. Right. My guess is you'd rather go back to the district court if you could read our minds and we felt that we're bound by, what is it, Valdez-Valdez? Because if we were to say we're bound by Valdez-Valdez on what may be fictional facts, assuming he's a first offender or diverted, you would lose. There may be a split, but you'd lose. Correct. So you'd rather get a vacate remand to clarify the fact. Your argument, don't agree with me if you don't, but your argument depends on convincing us that Valdez-Valdez couldn't be right. That's correct, and I will now turn to convincing you that Valdez-Valdez is not right and is not binding on this court. And to start with that criminal history points, which is, I think, our stronger argument, and I'll rest on the briefing for the 2L1.2 argument, unless the court has questions. For the criminal history, I'll start with the guidelines text and then turn to this court's precedent, because I think that provides the proper framework for understanding the issue. And so for Chapter 4, starts with 4A1.1, which has that graded point system, for a quote prior sentence, unquote. That is a term of art that is defined in the next guideline, 4A1.2A1, as any sentence imposed upon adjudication of guilt, not for conduct that was part of this instant offense. So it's a requirement for that prior sentence definition that there be an adjudication of guilt. But 4A1.2 continues to subsection F, which provides for diversionary dispositions that a guilty plea, which we concede Mr. Valdez did plead guilty to the child molestation offense, is counted as a entered. Counsel, let me ask you, it strikes me that the 11th Circuit had a very persuasive approach to this problem in their Baptiste opinion. Could you comment on that? So I think the 11th Circuit got it right in Baptiste in how it analyzed and followed the trail of guideline terms to ultimately decide that the only one point can be scored in Baptiste, if I recall correctly, it was probation with a condition of 198 days of imprisonment. So the question was two points or one. And the 11th Circuit said one point because 4A1.2F specifically says count it under 4A1.1C, and C adds one point for each prior sentence not counted in A or B up to four total points for this subsection. So applying that trail would lead a first offender Georgia sentence without adjudication of guilt to get that one point. How did the 11th Circuit deal with the sentence at the end of the commentary that seemed determinative for Valdez-Valdez? Do you remember? I don't remember if it did, but the important thing about that sentence, if we're talking about the same thing, is that it's the commentary note two, which is the definition of sentence of imprisonment. Importantly, 4A1.1C does not talk about a sentence of imprisonment. Only A and B refer to a prior sentence of imprisonment. 4A1.1C just refers to prior sentence. And so that reference to that commentary note two saying, you know, if probation has time to it, then score it under A or B doesn't come into play because of the guideline trail that we've followed in applying it. And then, of course, Baptiste also uses the expressio unius canyon to say to the exclusion of the others because, of course, the guidelines say it. Terminologically, guilty plea does or you would say doesn't equal adjudication. The adjudication portion is deferred, correct? Correct. What do we, is the guilty plea a conviction or is conviction synonymous with adjudicated? For our purposes here, guilty plea is a conviction. Is a conviction. Yes. So that's why when Ms. Chavez objected to the original PSR, she said he was convicted. All she meant was guilty plea, not adjudicated. Correct. Correct. And so it is that adjudication piece that is important. Now, Geraldo Lara was the 1990 case from this court that was asked, does this diversionary disposition, guilty plea, no adjudication of guilt, score? And if so, how? And in that case, the litigants had argued and the court recognized that the definition of prior sentence requires an adjudication of guilt. And Texas deferred probation did not have an adjudication of guilt. But the court continued, okay, it doesn't score under 4A1.1, but look at this 4A1.2F, diversionary disposition, it counts. And so that was the holding of Geraldo Lara that the diversionary disposition counts under 4A1.2F. Now, Geraldo Lara did not present the additional factual question or legal question of what happens when there is some time that is assessed with that diversionary disposition. And so in Valdez, Valdez, 1998, he had received a diversionary Texas deferred adjudication with a condition of 180 days jail time as his, part of his probation. And so the court was asked, how many points does this get? And the court said, well, look at 4A1.1. We apply that in order. It has enough points to get counted under B, so we don't go any further. The problem with that is that Valdez, Valdez is saying this counts under 4A1.1. But Geraldo Lara had already said eight years earlier, this being a deferred, a diversionary disposition counts under 4A1.2F. So that reasoning, those holdings are in conflict. And when that happens, it's the earlier panel decision that controls on that issue. But Valdez, Valdez didn't just overlook Geraldo, right? It cited it. Right. And it cites Geraldo Lara, and Geraldo does have what I call imprecise language. It could be dicta. In the holding for Geraldo Lara, I believe it's like the last paragraph of that decision, it says that the diversionary disposition counts under 4A1.2F as a, quote, prior sentence. And it had other, in another portion of the decision, used ellipses and bracketed languages to remove the reference to 4A1.1C. There's nothing in the decision or the briefs that make that choice to remove the reference to 4A1.C intentional. It wasn't necessary to decide how many points Geraldo Lara got. It appears to have been a stylistic choice to maybe simplify the holding, the language, but in a way that unfortunately then was misconstrued by later panels because on first blush, yeah, it looks like Geraldo said 4A1.2F clearly refers back to 4A1.1C. What do you ask the panel to do? So I would ask the panel to decide that legal issue in our favor and say that a diversionary disposition without an adjudication of guilt can only count under 4A1.2F, and that means one point at a maximum because of the reference to 4A1.1C. And if the court is uncomfortable with the new factual dispute, then remand to the district court for resolution of whether Mr. Velasquez was indeed a judge guilty or not. I couldn't find an example of this court assuming for the purposes of appeal a fact like this, so that may be asking too much. But I do think that especially because there is messy case law out there, it is important to give litigants some guidance. I couldn't find any cases citing that portion of Valdez-Valdez. I don't know if that's because, you know, it's very uncommon for people to have time associated with probation. I don't know if it's because everyone's following the guideline text or if everyone's following Valdez-Valdez. Well, getting back to what Judge Higginbotham asked, just to flesh it out a little bit more, what do you want us to do? It seems to me that the holding would need to be based on whether we say it or not, that we say that Valdez-Valdez violated our rule of orderliness and misapplied controlling precedent and it is not precedent on this issue. Yes? Yes, correct. Because Valdez-Valdez was bound by Gerardo Lara on applying 4A1.2F and it did not do so. And so that was in conflict and so that is no longer binding. And then the court would apply 4A1.2F because of that express reference to 4A1.1C and the persuasive reasoning of Baptiste hold that it was only one count. All right, counsel. Anything else? Nothing further? If you have no further questions, then I have rebuttal time. Thank you. Good morning, Your Honors, and may it please the Court. Charles Fowler for the United States. I will begin by addressing briefly the issue that I raised in my 28J letter and the reasons for raising it at that point in time. Candidly, I think I allowed myself to somewhat too easily be lured into accepting the characterization in the defense brief of the prior adjudication and it was upon preparing for argument today that I realized it was simply incorrect and I alerted Your Honors of that as soon as I was, as soon as I could. Were you the assistant attorney at the sentencing? I was not, Your Honor. I've only had this case for the purpose of the appeal. Well, you say it's perhaps defense counsel characterization, but it seems that everyone's treated it a single way, including the government, until now. Yes? Well, I did certainly adopt that characterization in my brief before this Court. I don't think it's quite right to say everyone was on the same page on this issue in the district court. Really the notion of a diversionary disposition didn't come up until the sentencing hearing. Even in the defense written objection in the district court, the argument was somewhat that should count for one point and if you read the sentencing transcript, it appears that it was actually the district judge who suggested for the first time that if there is an argument here at all, it's that this is perhaps a diversionary disposition, but then he overruled that objection without the government really needing to take a position on that in the district. Would you suggest, also in line with what we've already said this morning, what do you Well, Your Honors, I would suggest that there is really no ambiguity. If you look at the judgment, there's clearly a spot that the court, well, for one thing, as a legal matter, he was not eligible for the kind of disposition under Georgia law that the defense has urged that this was. As a factual matter, I don't think there's anything for the district court to do. There's not a, it doesn't need to correct a contrary finding or anything like that. The judgment says what it says. So I would, I think this court has discretion given those circumstances to say, look, the parties briefed it the way they briefed it, but there is a factual issue that pre-termits all this and simply hold that this was not a Georgia first offender disposition in the first place and affirm on that ground. I think you've got discretion to do that. I would My, my difficulty just, you know, for, for advocacy before us is the 28J letter didn't just alert us to a fact correction. The 28J letter cites cases that are decades old, correct? That's improper. And then the second thing is the 28J letter says this is a reason to rebut the appellant's argument. But as I read it, this is really an errata. Your, your 28J, if I were writing, would have said we were wrong repeatedly in our brief when we said he had deferred adjudication and he is not convicted because now your position is a factual one that you were completely wrong multiple times, statement of the case and argument. You're now saying he was convicted. Yes, Your Honor. And I, I, I did bring that to the court's attention. Well, but you didn't bring it to an attention saying that government needs to retract what its position is before this court. You brought it to the attention saying we should still affirm in a sentence. Yes, Your Honor. And let me be crystal clear to the court right now. I was wrong in my brief. Um, and I, again, I apologize for that uh, perhaps I should have, uh, been more explicit. To resolve this case, we, everyone seems to agree we've got the 11th circuit that would know Georgia law better than we do, disagreeing with Valdez-Valdez. So we have a split whether the Supreme Court wants to let the commission resolve those or not. You're still asking us to go forward and, and, and avoid that split by our saying we know he isn't a first offender under Georgia law. I think that is one way to resolve the case that the court has discretion, but I, I would be happy to, to move on, uh, on, on the assumption that he was sentenced under the Georgia First Offender Act because I think, uh, the outcome is the same. Why would we assume a counterfactual to affirm? I mean, this, this man may end up in criminal trouble again. It's vital not to have a publisher, an unpublished opinion saying he, he, he, he either was or wasn't a child molester. Yes, Your Honor. I, I don't think a remand is necessary because I think the, I think the outcome is, is going to be the same regardless. I mean, I, I think, uh, which of the two would you recommend? That factually it is true that he was diverted, was not convicted. He's a first offender Georgia's trying to rehabilitate, but the government says legally that still gets him an enhanced sentence or your 28 J paragraph saying no factually that's all untrue and the government somehow proven it to us and he's a felon child molester who served more than a year in jail. How do we pick door one or door two? I think door two is, despite it not being perfect, I think it is the better route because it is, it is more consistent with the record. Um, I think, you know, that would be deciding the case on the true facts as I think both parties now believe them to be. Um, but again, I do think that Valdez, Valdez, if he was diverted first offender and he, his, his conviction had happened in the 11th circuit, do you agree with opposing counsel that the 11th circuit would only allow him to get one point? I don't think that's entirely clear. I think that he would have a very good argument based on the Baptiste decision in the 11th circuit. The 11th circuit did address a somewhat different scenario. It actually didn't address Georgia law in that case. So that that case did not address the Georgia first offender act sentence. It was a, um, adjudication under Louisiana law that the court described as a, uh, adjudication withheld sentence. And the court, uh, in its judgment assessed a prison circuit was interpreting. I thought it was Florida law. They were interpreting Louisiana law. Baptiste, you may be right. I might've misspoke. It was, it was Florida law. Your honor. It was definitely not Georgia law. Uh, it, and the court described the adjudication as adjudication withheld. So it was not first offender. It was not deferred adjudication probation like this court has previously addressed under Texas law. Uh, it was something a little different and the prison time there, uh, the, the court reached the holding that it did to avoid actually the issue that the parties had briefed in that case. And this is all laid out in the opinion, which was whether the 198 days that the judgment reflected the defendant having spent in, in incarceration of some kind even counted in the first place because really it was in, um, administrative, uh, immigration detention. So the court said, we, this is the way the parties have presented the case, but we're not going to resolve it because we believe, uh, this to be a diversionary disposition in any event. And then from there, the court went through the analysis that, uh, my opponent is described by starting at 4A1.2F and saying, given that that provision controls under the negative implication canon, only 4A1.1C can apply and therefore only, only 1.1A, uh, only one point can be assessed. Uh, but this case, first of all, is controlled by Valdez-Valdez. This court is, of course, got its own, uh, binding precedent on the point. And I think there might, if I were arguing this case in the Eleventh Circuit, I would suggest that this defendant's disposition, uh, is whatever Baptiste said, not controlled by that necessarily, because it's crystal clear that he pled guilty. He was sentenced. There was no deferral of the imposition of his sentence. There was no deferral of the execution of his sentence. He served actual time in prison and it wasn't admin, there was no issue as to maybe that was administrative, uh, detention. It was clearly incarceration on the, on the crime he pled guilty to and in... That's a pro, a probationary prison sentence of more than 60 days. Yes, Your Honor. That's the commentary language you... It's a, exactly, Your Honor. But if a probation sentence is then expunged, I don't see why the guidelines don't control, right? There is no probation sentence. He was diverted. So... And he fulfilled the terms of the diversionary sentence, which included prison time, but then it's gone. So I, I think it's, here I'd like to come to the, the actual analysis of Valdez-Valdez, which I, I will explain why I believe is still controlling on this court. Controlling and correct? Controlling and correct, yes, Your Honor. And the, the key language in Valdez-Valdez, which I do believe is perhaps in tension with the 11th Circuit and Baptiste, is it, it goes through its analysis, its prior analysis in Geraldo Lara, and then it begins to work through the various applicable criminal history guidelines, and it refers to the one for diversionary dispositions, 4A1.2F, and then it goes down to the, the definition of prior sentence, which is in 4A1.2A, and starts ticking through those provisions, and it gets to 4A1.2A3, which deals with the scenario in which a sentence of imprisonment is, is the imposition or execution of sentence is totally suspended. And the next sentence in the court's analysis there is the kind of disposition that's discussed in 4A1.2F, the diversionary disposition, falls under that provision, the provision for scenarios where imposition or execution is totally suspended. And it went on, the court went on to say, here you have actual incarceration imposed and actual incarceration served, and in that scenario, we, we subject this to the ordinary graded approach in 4A, 4A1.1, and here, in that case, it was between 60 days and 13 months, and so it, it was more than 13 months, and under, just under a straightforward application of, of what I think is, is the court's clear analysis in Valdez-Valdez, it was more than 13 months, so it receives three points under C, and I think that makes perfect sense when you look at the guidelines overall context, because as, and, and Judge Higginson is correct that I, I cited some cases that were older, but they, I, I brought them to the court's attention because they contain basically the same analysis as Valdez-Valdez, but in perhaps a little bit more explicit terms. They say, look, when you've got a defendant who, who comes in, pleads guilty, is sentenced to prison, and serves prison, at least as far as his days spent in incarceration are concerned, that is, that is not a diversion from the judicial process. It's simply, uh... I agree with those cases, you know, and we're bound by Valdez-Valdez probably, but I don't agree with its logic. I think they're comparing apples and oranges. One thing, you get sentenced, you get prison. Another thing is, you get sentenced, no prison, yes probation. Then you get a condition that's home confinement or some version of incarceration. That's what that sentence is saying. That's what those cases are saying. But those are not diverted cases where the conviction disappears, and you're just told behave well somehow, maybe even in prison, and if you do, you're out of jail, there's nothing in your criminal record. It would seem, I, I tend to think the Eleventh Circuit got it right. Those circumstances are governed by the two guideline text provisions. No adjudication of guilt, diverted. But, but I agree, you, you've described what we said in Valdez-Valdez. Well, you know, I think, Your Honor, actually, that the Eleventh Circuit's 1999 decision in Schezier, uh, is an answer to your concern there. This is one of the cases that's cited in my 28J letter, and that case deals with a, uh, a, a first offender pardon. So it's not under Georgia, Georgia law, but it's, it's a Georgia first offender pardon, which I think is probably closer to this Georgia first offender statute, uh, than, than what any of these other decisions actually address. And the court there says exactly, uh, what I'm, what I'm arguing, and exactly, I think, what Valdez-Valdez says, which is that when you've got prison time, uh, What's this case? This is Schezier. It is, um, I'll just go ahead and give you, But it's in the 28J? Yes, Your Honor. It's, uh, it's 179, Fed 3rd, 1317. And, uh, just so you've got that. But, uh, that case says, look, the guidelines have, the guidelines have separate provisions for pardons. Uh, no one argues that, you know, and here as well, nobody argues that this defendant received a pardon. If there is some kind of retrospective expungement or pardon, um, or, or some kind of after the fact remedy, uh, where this defendant is able to complete a sentence and for state law purposes not be treated as a felon anymore, uh, so be it. And if, if the defense has an argument under those provisions, uh, it, it would fall under the guideline, the separate guidelines provisions that deal with pardons. But with respect to whether it comes within the terms of a prior sentence in the first place, uh, if he's sentenced to prison and he serves prison, then, uh, that is going to count irrespective of what the, the consequences might be down the road. The argument now, obviously we wanted to hear the argument and you're exchanging with Joe Jacobson just to make sure I understand where this fits. This basic seems to be fitting with whether Valdez, Valdez is right or wrong, not whether it's controlling. Yes, Your Honor. So, so let me just turn into whether it controls. And, uh, I think the simplest, the, the argument is that Geraldo Lara is an earlier inconsistent case. Uh, I think most simply there can be no inconsistency because the courts, uh, address simply different kinds of facts. If, if the court accepts how I've explained the reasoning of Valdez, Valdez, it is based on the fact that there was imprisonment actually imposed and actually served. And that would be a circumstance entirely different than what the court faced in Geraldo Lara. And if the courts rendered really the, really the same hold consistent holdings on totally different factual records, there could be no inconsistency, uh, that would keep this court from finding that Valdez, Valdez was controlling. I think, uh, another important point here is one that Judge Higginson pointed out in my opponent's argument, which is this is not a scenario where a later panel in Valdez, Valdez, uh, rendered some holding unaware of what a prior panel had done. And given that unawareness reached a contrary decision, this court in Valdez, Valdez explicitly grappled with, uh, the earlier analysis in Geraldo Lara, walked through that analysis step by step and purported to give a holding that was perfectly consistent. I think if anything, this court is bound by its own, uh, its own construction of Geraldo Lara that it rendered in Valdez, Valdez. This, the Valdez, Valdez panel certainly didn't think that it was rendering a decision that was in conflict with Geraldo Lara. And I, I think this, this panel would be, that, that would itself be a holding that this panel would be bound by under the rule of orderliness. Uh, and so I don't think, and by the way, the case that the defense is cited, uh, on the rule of order, orderliness, I think nicely illustrates both of those points. For one, uh, the court didn't strain to find a conflict so that it could follow its earlier case and disregard its later case. It actually, uh, it, it reconciled the two decisions and said, really, there's no conflict here in the first place, where the, this, this court hasn't rendered inconsistent decisions. And I think that's, that's the sensible and sort of orderly approach. And it also illustrates that, uh, this is a fairly some comfort for the circuit courts to think the sentencing commission in looking at this, uh, can straighten some of this out with new guidelines. Of course, they've not been able to act for years, but I think they have a quorum now. They have a chairman from the same courthouse I'm in in Jackson, Mississippi. So I think maybe I'll start addressing some of this, but we need to resolve the case that is before us and not depend on them. Do you have anything further for us? No, Your Honor. All right. Thank you. Thank you, Your Honor. Um, I'll start with rule of orderliness. That's where we left off. I do think the Newman case that is, sorry, the Newman case that was cited in our briefs is, I think, helpful because in Newman, it talks about being bound by the implicit reasoning of the prior decision and also the steps taken to make that holding. And in Newman, it was an arbitration case, but an earlier case said to decide whether an arbitration agreement exists, that's something that's decided by the court. Parties were later on arguing, oh no, we're going, but what about who the agreement is enforceable against? That should be decided by the arbitrator, not the court. And this court said, those are really two sides of the same coin, whether an arbitration agreement exists and who it's enforceable against, and that was decided by our earlier case. Here... Is this a settled proposition under rule of orderliness case law generally, that implicit holdings are as binding as explicit ones? So it seems settled in this case, although I didn't find others, you know, supporting that exact proposition that's in the Newman footnote. But I think the idea of the holding being two sides of the same coin is important because here, Geraldo Lara held how a diversionary disposition without adjudication of guilt is scored. And how many points it gets is the other side of that same coin. We, it seems some of our rule of orderliness cases, and it comes up more often than it should, but we are supposed to be bound by our own opinions, almost equates it with res judicata. Is it, is it held in sufficient detail, focus of the court, et cetera, in the prior precedent such that it, that it would be res judicata raised again in a context to which that doctrine applies? Implied rulings are sort of on the fringe of that sort of approach. Well, you're dealing with what you have. And I don't think it's implied. I think Geraldo Lara says under 4A1.2F, this counts. And I was looking quickly for, he was talking about, you know, when pardons and things being stayed, and I was looking for 4A1.2E, and it doesn't have that same definition or explanation that Valdez-Valdez has. Maybe it's something I missed by just bringing it to the court's attention that perhaps some of the language that is in Valdez-Valdez has changed. And of course, we're dealing with the guidelines that are before us now. Have you had a chance to look at the Shazier decision? I don't think I did look at Shazier, but I did look at DiPino, which is the other case he cited. And that actually was an example of being remanded for more factual development. And on that point, Wright, which is an Eleventh Circuit case cited in our opening brief, there was a question of whether the person had been adjudicated guilty of an offense, and the court remanded for development of that because the PSR was not specific. Was there an adjudication of guilty or not? Here, our PSR doesn't say one way or the other. And it's true our written objection, as opposing counsel mentioned, did not specifically articulate this objection. She did at the final sentencing hearing clearly rely on 4A1.2F and it being an admission without an adjudication of guilt. But she also mentioned at the first sentencing hearing that this is a sentence under the first offender statute of Georgia, and it's like Texas deferred adjudication. And the judge said, oh. So it was brought to the attention of probation, opposing counsel, and the court that she believed it to be an— When's your client's release date? January 4th. Of 2023? Of 2023. It's less than two months. Is there a condition that he'll be deported? I don't know if there is a, you know, a detainer entered. So in two months? In two months. He likely is, you know, deportable, but we have had clients who, for whatever reason, are not actually deported. Remind me, did we expedite this case? Yes, it is expedited. And I would— Your acknowledgment that maybe a vacate and remand to be sure we get our facts right before we stumble into a circuit split is problematic. A remand for resentencing. Right. I mean, I think either way, you know, if we are right in our reasoning, we don't get much time out of it. And I'll just briefly say, as I said in the reply brief, I believe the government's argument ignores the definition of prior sentence. And we can't do that. Thank you, Your Honor. All right, counsel. Thank you both. We will take the case under advisement and considering the release date. Try to make a ruling as soon as possible.